IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ALICIA THOMAS,          *

     Plaintiff,        *

        v.                            CIVIL NO.: WDQ-10-3070

COMMISSIONER, SOCIAL SECURITY,     *

     Defendant.
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Alicia Thomas sued the Commissioner of the Social Security Administration ("the Commissioner") for review of Administrative Law Judge Judith Showalter's ("ALJ") decision that Thomas is not disabled. For the following reasons, the Court will adopt the Magistrate Judge's Report and Recommendation ("R&R") in part. The Commissioner's motion for summary judgment, and Thomas's motions for summary judgment and a continuance will be denied. The matter will be remanded for further proceedings.

I.   Background[1]

Thomas, a former nurse, applied for Disability Insurance Benefits ("benefits") and Social Security Income on April 28, 2006. She alleged that her disability began on June 14, 2005. ECF No. 23 at 1. Her claim was denied on initial review and reconsideration. *Id.* at 1-2. Thomas requested a hearing, which was held on August 29, 2008 before the ALJ. *Id.* at 2.

The ALJ applied the five-step process established in the C.F.R.[2] for evaluating Thomas's disability claims. *Id.* (citing 20 C.F.R. § 404.1520). In the first step, the ALJ found that Thomas has not engaged in substantial gainful activity ("SGA") since she claimed to have become disabled. *Id.* at 2.

---

[1] The Court will adopt the Magistrate Judge's findings of fact to which the parties did not object. *See* 28 U.S.C. § 636(b)(1)(C). In reviewing a motion for summary judgment, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In reviewing cross motions for summary judgment, the Court "consider[s] and rule[s] upon each party's motion separately and determine[s] whether summary judgment is appropriate to each." *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

[2] An applicant is eligible to receive benefits if (1) she is not engaging in SGA; (2) the medical severity of the impairment satisfies a durational requirement; and (3) the impairment qualifies as a disability; OR (4) the applicant's residual functional capacity ("RFC") prevents her from doing her past relevant work and (5) based on her RFC and age, education, and work experience, the applicant cannot adjust to other work. 20 C.F.R. § 404.1520.

In the second step, the ALJ determined that the medical evidence supported a finding that Thomas's problems with her right shoulder, bilateral wrist, depression and anxiety, and fibromyalgia are severe impairments that caused significant vocationally relevant limitations. ECF No. 23 at 2. The ALJ determined that the medical evidence did not suggest Thomas had severe impairment related to asthma, neck and back pain, cervical problems, lymph nodes, photophobia, neurologic disease, occipital neuralgia, or allergies. ECF No. 8 at 17F-H.

In the third step, the ALJ found that Thomas's impairments did not meet or equal an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. ECF No. 23 at 2.

In step four, the ALJ found that Thomas was unable to perform her past relevant work ("PRW"), but her residual functional capacity ("RFC") allowed her to

> perform sedentary work as defined in 20 C.F.R. [§§] 404.1567(a) and 416.967(a) except with occasional postural activities but no climbing ladders, ropes, or scaffolding, frequent rather than constant reaching, handling, and fingering, no pushing and pulling with right upper extremity, no overhead work, and limited to simple, unskilled work with no production pace, low stress defined as only occasional changes in work setting and only occasional need to make decisions or use judgment, and essentially isolated with only occasional supervision.

ECF No. 8 at 17K-L, 17T. The ALJ considered treatment records and reports from Thomas's numerous doctors. *Id.* at 17L-17T.

She accepted Dr. Thomas Brandon's opinion that Thomas had impairments of her left wrist, right shoulder, and fibromyalgia. ECF No. 8 at 17o. The ALJ noted that "Dr. Brandon failed to explain why [Thomas's] impairments would limit [her] standing, walking, and sitting activities." *Id.*

The ALJ stated that she gave "[l]ittle weight" to Dr. Brent Fox's August 2008 RFC opinion because "it was inconsistent with his treatment records and inconsistent with other medical evidence of record." ECF No. 8 at 17P. Based on this and other doctors' treatment records, she accepted that Thomas had a right shoulder impairment and, giving Thomas "the benefit of the doubt," fibromyalgia. *Id.* at 17o-17P. The ALJ was "unable to give much weight" to a second RFC form from Dr. Fox's practice. *Id.* at 17P.

The ALJ stated that the State agency medical consultant's opinion "was based upon thorough review of the evidence," but "the State agency did not have the opportunity to listen to the sworn testimony or observe the claimant's demeanor," and additional evidence "did not support" some of the agency's opinions. *Id.* at 17S.

The ALJ "weighed heavily" all of the doctors' reports, including several conflicting opinions of Thomas's treating physicians. *Id.* at 17T. She found Dr. Robert Baumann's assessment "greatly persuasive." *Id.*

4

The ALJ considered the ALJ-appointed vocational expert ("VE"), Diana Simms's, opinion and the Department of Labor's *Dictionary of Occupational Titles* ("DOT"), and concluded that Thomas's past relevant work, as a nurse, was "medium exertional, skilled work," and a person with Thomas's residual functional capacity could not perform a nurse's duties. *Id.* at 17T.

To determine the final step--whether Thomas could perform other work that exists in significant numbers in the national economy--the ALJ asked the VE to

> consider a hypothetical person who is about [Thomas's] age at onset, that would be 33 years and a high school and college education and the work history that [Thomas has]. There are certain underlying impairments and limitations on the ability to do work related activities. The hypothetical [person will] start at a light level of exertion, posturals are all occasional with no climbing ladder, rope or scaffolds. Upper extremities avoid pushing and pulling with the upper extremities. Reaching, handling and fingering bilateral would be frequent rather than constant and no working at overhead. And nonexertionally this person would require simple, unskilled work, which is not at a production pace, [INAUDIBLE] by the piece or working on an assembly line, and low stress work defined as only occasional changes in the work setting and only occasionally need to use judgment or make decisions.

ECF No. 8 at 710. The VE stated that such a person could be an office helper or document preparer. *Id.* She testified that there are about 250,000 national and 500 regional light unskilled office helper jobs, 190,000 national and 350 regional light, unskilled information clerk jobs, 220,000 national and

375 regional sedentary, unskilled office helper jobs, and 150,000 national and 250 regional sedentary, unskilled document preparer jobs. *Id.* at 711. The ALJ found that the VE's testimony was consistent with the DOT. *Id.* at 17U.

On April 17, 2009, the ALJ concluded that Thomas was capable of successfully adjusting to work that "exists in significant numbers in the national economy," and was therefore not disabled. ECF No. 8 at 17U; ECF No. 23 at 2. On August 26, 2010, the Appeals Council declined to review the ALJ's decision, and finalized the denial of benefits. ECF No. 23 at 2.

On October 28, 2010, Thomas filed for review of the ALJ's decision in this Court. ECF No. 1. On January 20, 2011, the Court entered a scheduling order requiring Thomas to move for summary judgment by March 30, 2011, the Commissioner to file the same by May 29, 2011, and Thomas to reply by June 19, 2011. ECF No. 10. On May 27, 2011, the Commissioner moved for summary judgment. ECF No. 11.

On June 15, 2011, the Court amended the scheduling order. The parties were to decide whether they agreed to proceed before a Magistrate Judge by July 15, 2011. By August 19, 2011, Thomas was to respond to the Commissioner's motion for summary judgment. By September 9, 2011, the Commissioner would reply. Thomas was to submit another reply by September 30, 2011. ECF No. 14.

On July 18, 2011, Thomas declined to consent to determination of the case by a Magistrate Judge. ECF No. 15. On August 22, 2011, Thomas opposed the Commissioner's motion for summary judgment and moved for summary judgment. ECF No. 16. On September 9, 2011, the Commissioner replied to the opposition. ECF No. 17.

On September 9, 2011, the Court referred the case to a Magistrate Judge for findings of fact and an R&R. ECF No. 18. On November 10, 2011, Thomas moved for a continuance of the case. ECF No. 19. The Commissioner opposed the motion. ECF No. 20. On December 28, 2011, Thomas replied to the Commissioner's summary judgment reply. ECF No. 22.

On January 20, 2012, Magistrate Judge Stephanie Gallagher filed an R&R recommending denying Thomas's motion for a continuance[3] and the motions for summary judgment, and remanding the matter to the ALJ. ECF No. 23.

Judge Gallagher concluded that it was "unclear whether the jobs identified by the VE involved skills that were beyond [Thomas's] RFC" because the ALJ's hypothetical did not involve a worker who required "essential isolation." *Id.* at 6. Accordingly, Judge Gallagher was "unable to find that the ALJ's opinion at step five is supported by substantial evidence, and

---

[3] Judge Gallagher recommended denying the motion for a continuance because it was filed almost six weeks after the reply memorandum was due. *Id.* at 4.

remand is appropriate." Id.  Judge Gallagher added that although

> the ALJ provided a thorough synopsis of Ms. Thomas's medical history and provided a detailed rationale for her RFC determination, pursuant to 20 C.F.R. § 416.927(f)(2)(ii), the ALJ is required to "explain in the decision the weight given to . . . any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for the Social Security Administration." The current opinion lacks express assignments of weight to each medical source, and that deficiency should be remedied on remand.

ECF No. 23 at 6.

On February 2, 2012, the Commissioner objected to the R&R. ECF No. 24. He challenged Judge Gallagher's conclusions that the ALJ's decision should be remanded because (1) the step five finding lacked substantial evidence and (2) the ALJ did not expressly assign weight to each medical source she considered in steps two and four. Id. at 1.

## II. Analysis

### A. Standard of Review on Motion for Summary Judgment

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] A party

---

[4] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

may request summary judgment on "part of [a] claim or defense," and the Court may list in its order all material facts that are "not genuinely in dispute[,] . . . treating the fact as established in the case." *Id.* 56(a), (g).

In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted). When cross motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003) (*citing Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

B.   Standard of Review of Judge Gallagher's Report

A reviewing "judge . . . shall make a *de novo* determination of those portions of the [magistrate judge's] report . . . to which objection is made." 28 U.S.C. § 636(b)(1)(C). The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations," and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* The reviewing court need not review the portions of the report to which no objection is made.

C.   Standard of Review of the ALJ's Decision

The Court accepts the ALJ's findings of fact if they are supported by substantial evidence, and the ALJ applied the correct law. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance"--such that a "reasoning mind would accept [it] as sufficient to support" the conclusion. *Hays*, 907 F.2d at 1456.

The Court will not weigh the evidence, make credibility determinations, or "substitute its judgment for that of" the agency. *Hayes*, 907 F.2d at 1456; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Whe[n] conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court defers to the ALJ's determination. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The Court will

not affirm decisions that misapply the law. *Coffman v. Bowen*, 829 F.2d 514, 417 (4th Cir. 1987). The Court may affirm, modify, or reverse the decision, with or without remanding. 42 U.S.C. § 405(g).

The Court will not remand unless the ALJ's error affected the final determination of eligibility for benefits. *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994).[5]

D. The Commissioner's Objections to Judge Gallagher's Report

The Commissioner of Social Security engages in a five-step inquiry to determine eligibility for benefits. *Walls*, 296 F.3d at 290, 20 C.F.R. § 404.1520. The Commissioner objects to Judge Gallagher's conclusions that the ALJ's decision should be remanded because ((1) the step five finding lacked substantial evidence and (2) the ALJ did not expressly assign weight to each medical source she considered in steps two and four. ECF No. 24 at 1.

1. Step Five Finding: Existence of Jobs

"At step five [of the inquiry], the agency has the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform." *Walls*, 296 F.3d at 290. Judge Gallagher concluded that "the ALJ's

---

[5] *See also Washington v. Comm'r of Social Sec.*, 659 F. Supp. 2d 738, 754 (D.S.C. 2009); *Naundorf v. Astrue*, No. SKG-10-0650, 2011 WL 1230810, *8 (D. Md. Mar. 29, 2011).

determination that there are jobs existing in the current economy that Ms. Thomas can perform . . . is not based on substantial evidence" because the hypothetical posed to the VE did not mention that the worker required essential isolation. ECF No. 23 at 4. The Commissioner contends that Judge Gallagher "did not consider whether . . . administratively-recognized vocational evidence [other than the VE's testimony] showed that [Thomas's need for isolation] was . . . consistent with the occupations the [VE] identified." ECF No. 24 at 2. The Court reviews Judge Gallagher's determination *de novo*. 28 U.S.C. § 636(b)(1)(C).

"In order for a [VE's] opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Johnson*, 434 F.3d at 659. The ALJ's

> failure to posit a correct hypothetical to a [VE] can constitute reversible error whe[n] the [Commissioner] otherwise fails to meet her burden of proving that a claimant retains a residual functional capacity to perform certain types of work.

*Bell v. Chater*, 57 F.3d 1065 (table), 1995 WL 347142, *4 (4th Cir. Jun. 9, 1995).

The Court may consult the DOT in addition to the record in evaluating the ALJ's determination. *See, e.g., Harvey v. Heckler*, 814 F.2d 162, 164 (4th Cir. 1987); *Knox v. Astrue*, No. TMD-10-1125 2011 WL 5513206, *3-4 (D. Md. Nov. 10, 2011).

The ALJ determined that the VE's testimony that a person with Thomas's education, age, and limitations, could perform the duties of an office helper or document preparer was "consistent with the information contained in the [DOT]." ECF No. 8 at 17U.

According to the DOT, an office helper

> Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments . . . . May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

*DOT*, 239.567-010, 1991 WL 672232 (1991). The office helper's interaction with other people is "not significant," but she must occasionally speak and signal to others. *Id.* Talking occurs "occasionally," up to one-third of the time in her duties. *Id.*

A document preparer

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single

>page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR . . . of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

*Id.* 249.587-018, 1991 WL 672349. The document preparer's interaction with people is "not significant," and talking is "not present" in her duties. *Id.*

A person who can only work in essential isolation might be unable to be an office helper, but according to the DOT description, she might be able to be a document preparer without much human interaction.[6] To conclude that a person with significant isolation needs, and Thomas's other limitations, could successfully be a document preparer, would require the Court to re-weigh the evidence and substitute its judgment for that of the ALJ and the VE's opinion. *See Barton v. Astrue*, 495

---

[6] *Cf. Ren v. Astrue*, No. 08-1242, 2009 WL 3497785, *9 (D. Colo. Oct. 29, 2009) (upholding ALJ's finding that applicant could perform the job of retail marker when VE's opinion did not consider applicant's inability to deal with the general public because DOT definition demonstrates that retail markers do not deal with the general public); *Bartley v. Astrue*, 2011 WL 4596703, *3-4 (S.D.W. Va. Sep. 30, 2011) (ALJ's limitation to "simple routine tasks" rather than "unskilled work" was harmless error; simple and unskilled are similar enough that error was harmless).

F. Supp. 2d 504, 511 (D. Md. 2007) ("[I]t is unclear whether the jobs identified by the VE involved skills that were beyond" the applicant's capabilities.).[7]

It is unclear whether (1) the VE would have opined that a person with all of Thomas's limitations could be a document preparer, and (2) if she found that someone like Thomas could be a document preparer but not an office helper, the ALJ would have concluded that there was a significant number of jobs in the national economy that Thomas could perform. Accordingly, remand is necessary to allow the ALJ to re-weigh the evidence, taking Thomas's social limitations into account. *See Walls*, 296 F.3d at 290 (court will not weigh the evidence or make credibility determinations).

    2.   Express Assignments of Weight Given to Medical Sources

Judge Gallagher stated that, on remand, the ALJ should "explain in the decision the weight given to any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for the Social Security Administration." ECF No. 23 at 6 (*quoting* 20 C.F.R. § 416.927(f)(2)(ii)). The Commissioner contends that "the ALJ is not required to assign weight explicitly to each medical source or to every document" though it "must consider all the evidence in the case record."

---

[7] *See also Culotta v. Astrue*, No. SAG-10-3137, 2011 WL 6300585, *9 (D. Md. Dec. 15, 2011); *Mandycz v. Astrue*, No. SAG-10-2287, 2011 WL 5515489, *3 (D. Md. Nov. 9, 2011).

ECF No. 24 at 4 (*citing* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

The Social Security Administration ("SSA") must "evaluate every medical opinion [it] receive[s]." 20 C.F.R. § 416.927(d). An ALJ must

> explain in [her] decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the SSA].

*Id.* § 416.927(f)(2)(ii). This requires the ALJ to provide sufficient explanation for "meaningful review" by the courts. *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 409 (6th Cir. 2009); *Chandler v. Comm'r of Social Sec.*, No. 11-2220, 2011 WL 6062067 at *4 (3d Cir. Dec. 7, 2011). Implicit assignments of weight can support meaningful review. *Chandler*, 2011 WL 6062067 at *4.[8] The ALJ's opinion must make clear that she "recognized and evaluated the treating relationships" of medical sources. *Blakley*, 581 F.3d at 409.

---

[8] Upholding an ALJ's determination when the ALJ stated that he: (1) gave "significant weight" to one opinion, (2) found that "no other treating or examining medical source statements . . . addressed the claimant's physical capabilities," (3) had "considered and evaluated" an opinion even though it attempted to make an ultimate disability determination, (4) explained why he discredited one source, and (5) showed, by incorporating a "sit/stand limitation" in the RFC, that he had given weight to another opinion. *Chandler*, 2011 WL 6062067 at *4.

The ALJ adequately indicated the weight she assigned each relevant opinion. The ALJ accepted Dr. Brandon's opinion that Thomas had impairments of her left wrist, right shoulder, and fibromyalgia. ECF No. 8 at 17o. The ALJ clearly gave little weight to Dr. Brandon's opinion that Thomas was unable to work, sit, stand, concentrate, lift, or exercise, as she noted that "Dr. Brandon failed to explain why [Thomas's] impairments would limit [her] standing, walking, and sitting activities." Id.

The ALJ explicitly stated that she gave "[l]ittle weight" to Dr. Fox's August 2008 opinion because "it was inconsistent with his treatment records and inconsistent with other medical evidence of record." ECF No. 8 at 17P. She implicitly gave some weight to Dr. Fox's treatment records, as she accepted that Thomas had a right shoulder impairment and, giving Thomas "the benefit of the doubt," fibromyalgia. Id. at 17o-17P. The ALJ was "unable to give much weight" to a second RFC form from Dr. Fox's practice. Id. at 17P.

The ALJ implied that she gave some weight to the State agency medical consultant's opinion because "it was based upon thorough review of the evidence," but the ALJ did not give it controlling weight because "the State agency did not have the opportunity to listen to the sworn testimony or observe the claimant's demeanor," and additional evidence "did not support" some of the agency's opinions. Id. at 17S.

17

The ALJ stated that she "weighed heavily" all the doctors' reports, including conflicting treating physician opinions. *Id.* at 17T. She found Dr. Baumann's assessment "greatly persuasive," demonstrating that she gave it great weight. *Id.* She also clearly gave more weight to the opinions that Thomas had severe impairments related to her right shoulder, left wrist, depression and anxiety, and fibromyalgia, and less weight to the opinions that suggested other impairments or more severe limitations, as she found that Thomas had the above limitations. *Id.* at 17E. The ALJ adequately indicated the weight she gave each opinion. *See Chandler*, 2011 WL 6062067 at *4. The Commissioner's objection will be sustained.

E.   Thomas's Motion for Summary Judgment

Thomas did not object to Judge Gallagher's recommended denial of her motion for summary judgment. Accordingly, the Court need only "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee note).

Because remand is necessary to clarify the record, it was not clearly erroneous to recommend denying Thomas's motion for summary judgment.

III. Conclusion

For the reasons stated above, the Court will adopt Judge Gallagher's R&R in part, deny the parties' motions, and remand the matter to the ALJ.

_2/24/12_  _____
Date                              William D. Quarles, Jr.
                                  United States District Judge